**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MEENAXI ENTERPRISE, INC., | : | **Civil Action No. 23-906 (SRC)** |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **OPINION & ORDER** |
|  | : |  |
| SINGH TRADING CO., INC. et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**CHESLER**, District Judge

This matter comes before the Court on two motions for default judgment, pursuant to Federal Rule of Civil Procedure 55(b), by Plaintiff Meenaxi Enterprise, Inc. ("Plaintiff" or "Meenaxi"): as to (1) Defendants House of Spices (India), Inc. ("House of Spices"), Neil Soni ("Soni"), Singh Trading Co., Inc. d/b/a Roshni Foods ("Roshni"), and Pardeep Singh Aneja ("Aneja"), (Dkt. No. 109); and (2) Bhavani Foods and Vegetables, Inc. ("Bhavani") and Mukund Patel ("Patel"), (Dkt. No. 113), (together, the "Motions for Default").  For the reasons that follow, the motions will be **GRANTED** in part and **DENIED** in part.

## I.    PROCEDURAL HISTORY

On February 16, 2023, Plaintiff filed the Complaint against a larger group of Defendants. The Complaint asserts five claims against all Defendants: (1) trademark counterfeiting under Lanham Act § 32; (2) trademark infringement under Lanham Act § 32; (3) false designation of origin under Lanham Act § 43(a); (4) unfair competition under N.J.S.A. 56:4-1; and (5) common law unfair competition.  The Complaint alleges that Plaintiff owns federal registration no.

4,206,026 for the BOURNVITA mark for, in brief, beverages with a milk base and beverages with a chocolate base. Plaintiff filed prior motions for default judgment against Defendants House of Spices/Soni on April 20, 2023, (Dkt. No. 50); Defendants Bhavani/Patel on May 31, 2023, (Dkt. No. 70); and Defendants Roshni/Aneja on June 15, 2023, (Dkt. No. 79), along with another group of Defendants not named in these Motions for Default.

The Court entered an opinion and order on June 21, 2023 denying two of Plaintiff's motions for default judgment against Defendants (1) DK Grocery Inc. d/b/a Apna Bazar Cash & Carry and Khadag Singh and (2) House of Spices/Soni (the "June 21, 2023 Opinion & Order"). (Dkt. No. 81.) Plaintiff filed a motion for reconsideration as to the Court's June 21, 2023 Opinion & Order on June 23, 2023, (Dkt. No. 82), which the Court denied, (Dkt. No. 84). Plaintiff appealed the Court's order denying its motion for reconsideration and the June 21, 2023 Opinion & Order on July 18, 2023. (Dkt. No. 85.) The Third Circuit issued an opinion affirming the Court's decisions on July 31, 2024. (Dkt. No. 90.) The Court then issued an opinion and order on August 29, 2024, denying Plaintiff's two remaining motions for default judgment against Defendants (1) Bhavani/Patel and (2) Roshni/Aneja (the "August 29, 2024 Opinion & Order"). (Dkt. No. 92.)

On November 4, 2024, Plaintiff moved to amend/correct the Complaint, (Dkt. No. 93), and Magistrate Judge Stacey D. Adams granted Plaintiff's motion on April 22, 2025, (Dkt. No. 94). Plaintiff filed an amended complaint on April 23, 2025 ("Amended Complaint"), asserting the same five claims as its original Complaint against all Defendants. (Dkt. No. 95 ("Am. Compl.").) The docket indicates that Defendants were served on April 24, 2025, April 25, 2025, and May 6, 2025, and have not appeared in the action.

Plaintiff requested the Clerk's entry of default for failure to plead or otherwise defend against Defendants (1) House of Spices/Soni on May 13, 2025, (Dkt. No. 105), which the Clerk

entered on May 16, 2025; (2) Roshni/Aneja on May 14, 2025, (Dkt. No. 107), which the Clerk entered on May 15, 2025; and (3) Bhavani/Patel on May 27, 2025, (Dkt. No. 110), which the Clerk entered on May 29, 2025. Plaintiff filed its motion for default judgment against Defendants House of Spices/Soni and Roshni/Aneja on May 23, 2025, (Dkt. No. 109 (the "First Motion")), and its motion for default judgment against Defendants Bhavani/Patel on June 11, 2025, (Dkt. No. 113 (the "Second Motion")).

The briefs in support of the Motions for Default are nearly identical, but for the names of the Defendants against whom default judgment is sought. Through these motions, Plaintiff seeks judgment against the Defendants specified on all five claims and asks for an award of statutory damages under the Lanham Act, a permanent injunction against future use of Plaintiff's mark, and an award of attorneys' fees.

## II.    FACTUAL BACKGROUND

This dispute arises out of Defendants' alleged "unauthorized importation and sale of BOURNVITA chocolate milk powder from India, in violation of Meenaxi's exclusive U.S. rights in its registered BOURNVITA trademark." (Am. Compl. ¶ 1.) Plaintiff is engaged in the "creation, research and development, refinement, production, marketing, importation and sale of a wide variety of food products and commodities, which are distributed primarily to Indian grocery stores in the United States." (Id. ¶ 2.) Defendants Bhavani, House of Spices, and Roshni are corporate entities and Defendants Aneja, Patel, and Soni are individuals that Plaintiff alleges are the officer(s) and/or owner(s) of the named corporate defendants and "personally participated in, and supervised, directed, managed, approved and/or controlled, the infringing activities of [their respective corporate entity] at issue in this case, including, without limitation, by personally arranging for and approving the sale of the infringing products at issue in this case." (Id. ¶¶ 3–4, 7–10.)

Since at least 2008, Plaintiff used the BOURNVITA mark for chocolate powder and other related goods. (Id. ¶ 21.) The United States Patent and Trademark Office ("USPTO") issued Plaintiff the BOURNVITA Registration in 2012 and it remains valid and incontestable. (Id. ¶ 23.) The Amended Complaint generally alleges that, "[i]n violation of Meenaxi's exclusive United States rights in its BOURNVITA mark, each of the Defendants has imported into the United States BOURNVITA branded chocolate milk powder produced in India by the Cadbury company." (Id. ¶ 26.) Plaintiff and Cadbury have no corporate affiliation or business relationship. (Id. ¶ 27.) While Cadbury owns the BOURNVITA mark in India, it has no rights to the mark in the United States market due to Plaintiff's ownership of the BOURNVITA mark in the United States. (Id. ¶ 28.) And the Amended Complaint alleges that in 2013, Cadbury filed a cancellation petition in the Trademark Trial and Appeal Board ("TTAB") of the USPTO seeking to cancel Plaintiff's BOURNVITA Registration, but Cadbury voluntarily withdrew its cancellation petition in 2015, and has not challenged Plaintiff's mark since. (Id. ¶¶ 29–31.)

Plaintiff alleges that the Cadbury BOURNVITA milk chocolate powder that Cadbury sells in India is physically distinct and materially different from the BOURNVITA milk chocolate powder that Plaintiff sells in the United States. (Id. ¶ 32.) For example, Cadbury's product contains different languages, nutritional information, and pricing on the packaging and does not contain a "Nutrition Facts" section with information required by the United States Federal Food, Drug, and Cosmetic Act and other FDA regulations. (Id. ¶ 33.) Plaintiff's product, however, "features the information required by the FDA that is missing from the front panel of Cadbury's BOURNVITA product." (Id.) Additionally, the Cadbury product lacks "key information" related to "quality control efforts" that Plaintiff's product contains. (Id. ¶ 34.)

Plaintiff alleges that Defendants continue to import Cadbury's BOURNVITA products into the United States knowing they lack the right to sell the products here. (Id. ¶ 35.) Plaintiff also alleges that Defendants are selling the Cadbury BOURNVITA products primarily to Indian grocery stores in the United States, without Plaintiff's authorization. (Id.) Because of Defendants' actions, Plaintiff has "undertaken extensive efforts to enforce its valuable rights in the BOURNVITA trademark" by, for example, obtaining a General Exclusionary Order from the International Trade Commission ("ITC") prohibiting entry into the United States of infringing goods that violate Plaintiff's trademark rights due to the ITC's finding that the import of Cadbury's BOURNVITA chocolate milk product is unlawful. (Id. ¶ 36.)

The Amended Complaint specifically alleges that Defendant Roshni sold "25 [cases][1]" and Defendant Bhavani sold "10 [cases]" of Cadbury's chocolate milk powder, in packaging bearing the BOURNVITA trademark, to an entity in New Jersey and both also "made many additional infringing sales of the same BOURNVITA goods to other entities in New Jersey and/or elsewhere in the United States." (Id. ¶¶ 37, 39.) Defendant House of Spices allegedly sold "23 [cases]" of Cadbury's chocolate milk powder, in packaging bearing the BOURNVITA trademark, to entities in New Jersey and Texas and also "made many additional infringing sales of the same BOURNVITA goods to other entities in New Jersey and/or elsewhere in the United States." (Id. ¶ 40.)

The Amended Complaint alleges that Defendants are aware of Plaintiff's mark but continue to sell the same infringing products by (a) using one or more of the same sources for acquiring the infringing goods, (b) using the same packaging, and (c) employing the "same or similar marketing

---

[1]     While the Amended Complaint uses the word "boxes" to describe Defendants' infringing sales to grocers, (Am. Compl. ¶¶ 37, 39–40), the Court uses the term "case" throughout this Opinion to avoid confusing the "wholesale" sales Defendants made to grocers with the sales of an individual box of infringing product made for $10 or less to consumers. (See First Motion, Ex. 1 & 2 (describing the product as "BV MALTED FOOD 8X1 KG" and "BOURNVITA 8 X 1kg(35oz)"); Second Motion, Ex. 1 (describing the product as "BONVITTA 1KGX8JAR").)

tactics, pricing structures, and distribution schemes in an effort to undermine Meenaxi's exclusive United States ownership rights in the BOURNVITA mark." (Id. ¶¶ 44–46.)

Defendants allegedly sell their BOURNVITA products in the same channels of trade as Plaintiff's BOURNVITA products, targeting "the same Indian groceries and the same class of consumers who regularly shop in such stores." (Id. ¶ 48.) Because both products are low cost, Plaintiff alleges that consumers are unlikely to scrutinize the goods prior to purchase, "enhancing the likelihood of consumer confusion." (Id. ¶ 49.)

As a result of Defendants' imports of the Cadbury BOURNVITA products from India into the United States, and the advertising, distribution, and sale of such products in the United States, Plaintiff claims it has suffered irreparable injury and damages and will continue to suffer from Defendants' infringing use of the BOURNVITA mark.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter default judgment against a properly served defendant who fails to file a timely responsive pleading. In the Third Circuit, "the entry of a default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). Before granting a default judgment, the district court must determine: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 683 (D.N.J. 2015) (citation omitted). "Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535–36 (D.N.J. 2008) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

## IV.    DISCUSSION

### A.  Jurisdiction is Proper.

The Court has jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. § 1121. The Court further has supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(a).

### B.  The Unchallenged Facts Present Legitimate Causes of Action for Trademark Infringement and Counterfeiting Under the Lanham Act, Unfair Competition Under N.J.S.A. 56:4-1, and Common Law Unfair Competition.

The Court is next tasked with determining whether the undisputed facts of the Amended Complaint allege legitimate claims for trademark counterfeiting, trademark infringement, false designation of origin, unfair competition under New Jersey law, and common law unfair competition.

### 1.  Trademark Infringement and False Designation of Origin (Counts II & III)

To prevail on claims for trademark infringement and false designation of origin, which "are measured by identical standards pursuant to the Lanham Act," "the record must demonstrate that plaintiff (1) has a valid and legally protectable mark; (2) owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." Gordashevsky, 558 F. Supp. 2d at 536 (citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000)).  "The first two requirements are satisfied when a federally registered mark has become incontestable." Id.

The Court takes judicial notice that U.S. Trademark Registration No. 4,206,026 is for the word mark, "BOURNVITA" and that Plaintiff is listed as the current owner.  Plaintiff also asserts that its mark has become incontestable.  (Am. Compl. ¶ 23.)  The first two requirements are thus satisfied.

The Amended Complaint contains uncontested allegations that Defendants' products "directly compete with the goods and service offered by the trademark owner" and are also "confusingly similar." See Matos, 133 F. Supp. 3d at 685. Defendants imported, distributed, and sold products using the same "BOURNVITA" mark and packaging on the same kind of product Plaintiff sells using its registered mark in similar trade channels. (Am. Compl. ¶¶ 35, 37, 39–40, 45–51.) Such facts demonstrate a likelihood of confusion and the use of the BOURNVITA mark on the infringing products "indeed makes such confusion inevitable." See Matos, 133 F. Supp. 3d at 685.

The Court finds that Plaintiff sufficiently stated a claim for trademark infringement (Count II) under the Lanham Act.

The Court, however, does not find that Plaintiff sufficiently stated a claim for false designation of origin (Count III) because as was deficient in the original Complaint, the Amended Complaint still does not identify what Plaintiff contends is the false statement of origin in this case. See also Meenaxi Enter., Inc. v. Singh Trading Co., 2024 WL 3594364, at *4 n.15 (3d Cir. July 31, 2024) (finding that plaintiff's false designation of origin claim fails because it "require[s] some degree of falsity in the product, which Meenaxi has not alleged"). As a result, Plaintiff fails to allege a legitimate claim for false designation of origin under the Lanham Act (Count III).

## 2. Trademark Counterfeiting (Count I)

To prevail on a claim for trademark counterfeiting, a plaintiff must demonstrate: "(1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit or was willfully blind to such use." Gordashevsky, 558 F. Supp. 2d at 536. "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the

defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." Id. at 536–37.

As discussed, the Amended Complaint sets forth a cause of action for trademark infringement. The Amended Complaint also contains sufficient allegations to satisfy the second requirement of a trademark counterfeiting claim.

Plaintiff alleges that it developed substantial public recognition of its BOURNVITA mark through its years of continuous use and that Defendants knew of Plaintiff's rights to use of the BOURNVITA mark in the United States but imported similar products bearing the same mark into the United States with knowledge that they had no right to sell such products in the United States. (Am. Compl. ¶¶ 25, 46.) Plaintiff further alleges that such acts were willful "and reflects Defendants' intent to exploit the goodwill and brand recognition associated with Meenaxi's BOURNVITA trademark." (Id. ¶ 56.) Plaintiff also alleges facts regarding the material differences between Plaintiff's product and Defendants' products, such as the fact that each product has its "own separate formulation," Plaintiff's product contains a "Nutrition Facts" box with information required by the FDA while Defendants' products do not, and that Defendants' products lack "key information in relation to quality control efforts," while Plaintiff's product contains such information. (Id. ¶¶ 32–34.) The Amended Complaint also states that Defendants sold products bearing the BOURNVITA mark in the same trade channels that Plaintiff sells its similar product, for a similar price. (Id. ¶¶ 49, 51.)

These facts as alleged—and uncontested by Defendants—show that "the likelihood of consumer confusion, mistake or deception is clear." See Microsoft Corp. v. CMOS Techs., Inc., 872 F. Supp. 1329, 1335 (D.N.J. 1994); see also id. ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct

competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety."); Gordashevsky, 558 F. Supp. 2d at 538 ("The fact that Defendant[s] sold goods using marks that were identical to such strong and established marks conclusively demonstrates [their] desire and purpose to trade upon [Plaintiff's] goodwill.").

The Amended Complaint therefore sufficiently establishes that Defendants' "allegedly infringing products are likely to injure the goodwill developed by the trademark owner in the trademarked goods." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 303 (3d Cir. 1998); see id. at 304 ("Any differences that are likely to damage the goodwill developed by the trademark owner can be deemed material."). Defendants' failure to respond also leads the Court to infer that the trademark infringement was willful. See, e.g., Kinsley Tech. Co. v. Exquisite Buys, 2023 WL 5218124, at *3 (D.N.J. Aug. 15, 2023).

For these reasons, the Court finds that the unchallenged facts establish a legitimate cause of action for trademark counterfeiting (Count I).

### 3. Unfair Competition Under N.J.S.A. 56:4-1 and Common Law Unfair Competition (Counts IV & V)

It is well established that "the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law." Buying For The Home, LLC v. Humble Abode, LLC, 459 F. Supp. 2d 310, 317 (D.N.J. 2006); see Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc., 952 F. Supp. 1084, 1091 (D.N.J. 1997) ("N.J.S.A. 56:4–1 is the statutory equivalent of Section 43(a)(1) of the Lanham Act."). Thus, the Court's analysis as to whether Plaintiff stated a claim for trademark infringement under the Lanham Act extends to Plaintiff's state law claims as well. Plaintiff therefore sufficiently established causes of action for unfair competition under N.J.S.A. 56:4-1 and common law unfair competition (Counts IV and V).

### 4.  Individual Defendants

As to the natural person Defendants, Aneja, Patel, and Soni, the Amended Complaint lacks specific facts on which to base a judgment of liability under any claim in the Amended Complaint. The Amended Complaint asserts identical, generic legal conclusions about their involvement in the infringing activities of their related entities as an "officer and/or owner."  (See Am. Compl. ¶¶ 4, 8, 10.)  Indeed, the only difference between the Complaint and the Amended Complaint as to the conduct of the individual Defendants is the added clause, "including, without limitation, by personally arranging for and approving the sale of the infringing products at issue in this case." (Compare Compl. ¶¶ 4, 8, 10 with Am. Compl. ¶¶ 4, 8, 10.)

The Court need not accept such legal conclusions as true when deciding a default judgment motion.  See Gordashevsky, 558 F. Supp. 2d at 535–36.  The Amended Complaint does not support any judgment of liability as to Defendants Aneja, Patel, and Soni and the Motions for Default will be denied as to these three individual Defendants.  The Amended Complaint does, however, set forth legitimate causes of action against corporate Defendants Bhavani, House of Spices, and Roshni.

### C.  The Entry of Default Judgment is Proper.

In determining whether the entry of default judgment is proper, the Court must consider "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  Matos, 133 F. Supp. 3d at 686 (quoting Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008)).  Defendants failed to proffer any defense to Plaintiff's claims and the Amended Complaint does not suggest the existence of any meritorious defense.  As Plaintiff has no other means of seeking damages for the harm caused by Defendant, the Court finds that Plaintiff

would be prejudiced in the absence of the entry of a default judgment.  Finally, "[c]ulpable conduct is conduct that displays 'willfulness' or 'bad faith' and amounts to 'more than mere negligence.'" Barrett v. Tri-Coast Pharmacy, Inc., 518 F. Supp. 3d 810, 830 (D.N.J. 2021) (quoting Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017)).  "[I]f a defendant fails to answer, move, or otherwise respond to an action, culpability will be presumed." Id.  As Defendants failed to answer or otherwise respond to this action, culpability is presumed.

All three factors therefore weigh in favor of granting Plaintiff's Motions for Default against Defendants Bhavani, House of Spices, and Roshni.

**D.  Damages.**

Finally, the Court must determine the appropriate remedies and amount of damages to award Plaintiff.

**1.  Statutory Damages**

Plaintiff seeks an award of statutory damages in the amount of $30,000 against (1) Defendants House of Spices/Soni; (2) Defendants Roshni/Aneja; and (3) Defendants Bhavani/Patel.  (See First Motion at 20; Second Motion at 19.)  As the Court previously found that Plaintiff failed to state claims against the individual Defendants, the Court's analysis will only assess damages as to Defendants House of Spices, Roshni, and Bhavani hereafter.

The Lanham Act provides that "on election of the plaintiff or where actual damages cannot be calculated, an award of statutory damages can be awarded."  Gordashevsky, 558 F. Supp. 2d at 537 (citing 15 U.S.C. § 1117(c)).  In cases involving the use of a counterfeit mark, the plaintiff may elect "an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed,

as the court considers just;" or, where the Court finds that use of the counterfeit mark was willful, "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."   15 U.S.C. § 1117(c).   Having concluded that Defendants' use of the mark was willful, the Court must determine the appropriate amount of damages.

"Courts have wide discretion in determining statutory damages." Broadcast Music, Inc. v. Crocodile Rock Corp., 634 F. App'x 884, 885 (3d Cir. 2015).  As statutory damages serve as a substitute for actual damages, "the requested damages should bear some [discernible] relation to the actual damages suffered." Matos, 133 F. Supp. 3d at 687 (citation omitted).  In assessing the propriety of a requested award, courts consider past statutory damages awards in addition to "the point of sale of the infringing goods and the monetary value of the item counterfeited." Id. at 688. Courts in this district have also considered the following factors:

> (1) [T]he expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Id. (quoting Platypus Wear, Inc. v. Bad Boy Club, Inc., 2009 WL 2147843, at *7 (D.N.J. July 15, 2009)).

Here, the alleged points of sale were of a wholesale nature to an entity named "A to Z Indian in Iselin, New Jersey," and for Defendant House of Spice, an additional location in Coppell, Texas.  (Am. Compl. ¶ 37, 39–40.)  In considering monetary value, expenses saved, and profits reaped by Defendants, the alleged counterfeited goods were sold for a wholesale price of $52 to $58 per case of eight according to Plaintiff's exhibits, (see First Motion, Exs. 1 & 2; Second Motion, Ex. 1), and each individual box retailed for $10 or less, (Am. Compl. ¶ 49).

-13-

Taking Plaintiff's allegations as true, Defendant House of Spices sold 23 cases of an infringing product to other grocers for around $49 to $53 a case, with the known invoices totaling $1,195 for 23 boxes.  (First Motion, Ex. 1.)  Defendant House of Spices therefore sold approximately 184 individual products (23 cases times 8 boxes per case), which priced at $10 each or less, would be sold by a non-party at retail for $1,840 or less.

Defendant Roshni sold 25 cases of an infringing product to other grocers for $58 a case, totaling $1,450.  (Id., Ex. 2.)  Defendant Roshni therefore sold approximately 200 individual products (25 cases times 8 boxes per case), which priced at $10 each or less, would be sold by a non-party at retail for $2,000 or less.

Defendant Bhavani sold 10 cases of an infringing product to other grocers for $58 a case, totaling $580.  (Second Motion, Ex. 1.)  Defendant Bhavani therefore sold approximately 80 individual products, which priced at $10 each or less, would be sold by a non-party at retail for $800 or less.

The Court can only assume these figures based on the invoices Plaintiff attached to the Motions for Default as Plaintiff provided no information on specific expenses saved and profits reaped by Defendants.

In considering the other factors relevant to the award of statutory damages, the Court takes into consideration Plaintiff's argument that its BOURNVITA mark is "valuable and generates substantial revenue for Meenaxi," and that it "invested significant time, money, labor and other efforts in developing and using its BOURNVITA mark" and faces significant threats of infringement.  (First Motion at 21; Second Motion at 20.)  While the Court takes these allegations as true, the Court still lacks any specific information regarding the value of the BOURNVITA mark and Plaintiff's profits or revenues lost.  The Court finds the fact that Plaintiff obtained a

-14-

General Exclusionary Order from the ITC prohibiting entry into the United States of infringing BOURNVITA goods that violate Plaintiff's mark demonstrates a need to deter other infringers and discourage Defendants from continued infringement as this Court already found Defendants' infringing conduct to be willful.  (Am. Compl. ¶ 36.)  As the Defendants have not appeared in this case, there is no evidence in the record to consider as to whether a defendant cooperated in providing records to assess the value of the infringing material.

In looking at past statutory damage awards, Plaintiff argues that a statutory damage award of $30,000 against each Defendant is appropriate considering all circumstances and comparable awards listed in other cases.  (First Motion at 23; Second Motion at 22.)  Plaintiff cites four cases where courts in this District awarded plaintiffs similar figures: Crocs, Inc. v. Dr. Leonard's Healthcare Corp., 2022 WL 3754858, at *6 (D.N.J. Aug. 30, 2022) (awarding $30,000 per infringed registered mark), LaFabril, S.A. v. Mi Terra Foods, LLC, 2021 WL 6010374, at *6 (D.N.J. Dec. 20, 2021) (awarding $50,000), Tri-Union Seafoods, LLC v. Ecuatorianita Import & Export Corp., 2021 WL 1541054, at *8 (D.N.J. Apr. 20, 2021) (awarding $25,000 against each defendant), and Meenaxi Enterprise, Inc. v. Shakti Group USA LLC, 2023 WL 7181433, at *10 (D.N.J. Nov. 1, 2023) (awarding $30,000 against one set of defendants and $100,000 against another set of defendants).

While the record reflects that Defendants were involved in the wholesale distribution of infringing BOURNVITA products, (First Motion, Declaration of Anil Gandhi ("Gandhi Decl.") ¶¶ 14–15; Second Motion, Gandhi Decl. ¶ 14), the counterfeited goods did not have the same potential to be widely disseminated like goods sold on the internet in other trademark cases like Crocs.  See, e.g., Matos, 133 F. Supp. 3d at 688 (discussing the "prototypical internet case").

-15-

La Fabril, Tri-Union, and Plaintiff's other case against Shakti Group USA involve similar claims of infringement on a wholesale level. In La Fabril and Tri-Union, however, additional factors weighed into the courts' grant of statutory damages such as the prolonged period of the infringing sales and the fact that defendants in both cases received multiple cease and desist letters to make them aware of their infringement of the plaintiff's mark prior to plaintiff filing its complaint. See, e.g., La Fabril, 2021 WL 6010374, at *6; Tri-Union, 2021 WL 1541054, at *7–8.

And while the Court may consider past statutory damages awards, it is not required to grant Plaintiff the same damages it received in another case, even if it was also the plaintiff in that case. In looking at the court's reasoning for awarding statutory damages in Meenaxi Enterprise, Inc. v. Shakti Group USA LLC, 2023 WL 7181433 (D.N.J. Nov. 1, 2023), the court awarded half of Plaintiff's requested damages for one group of defendants and did not offer further analysis as to the $30,000 award. See id. at *10. As for awarding another group of defendants a third of the requested damages, the $100,000 award, the complaint contained import records showing that the group of defendants imported "nearly 20,000 cartons of BOURNVITA products," which is a significantly higher number than the double-digit figures at play here. Id. at *2. The court described this evidence as "compelling" and discussed why the "significant award" of $100,000 was appropriate. See id. at *10.

In considering all these factors, and that in Lanham Act cases, "two factors overwhelmingly motivated statutory damage awards: the point of sale of the infringing goods and the monetary value of the item counterfeited," the Court does not believe an award of $30,000 per Defendant—thirty times the statutory minimum—bears a discernable relation to the harm Plaintiff suffered here. See Matos, 133 F. Supp. 3d at 688. For example, in cases where distribution of infringing goods is not widespread, courts have awarded $10,000 in statutory damages per infringement of a

*luxury* good.  See, e.g., Coach, Inc. v. Cosmetic House, 2011 WL 1211390, at *7 (D.N.J. Mar. 29, 2011); Coach, Inc. v. Ocean Point Gifts, 2010 WL 2521444, at *6–8 (D.N.J. June 14, 2020).

As stated, the point of sale was not online and though the sales were of a wholesale nature, the record only demonstrates minimal sales for each Defendant.  The value of the counterfeited items was also minimal at $10 a box or $49 to $58 a case.  The Court therefore finds an award of $1,000 against Defendant Bhavani (for 10 sales), $1,500 against Defendant House of Spices (for 23 sales), and $2,000 against Defendant Roshni (for 25 sales) to be reasonable and results in an award within the statutory requirements against each Defendant.  See, e.g., Kinsley Tech. Co., 2023 WL 5218124, at *5 (finding $10,000 for every 100 boxes sold—or $100 a box—to be an "appropriate amount of statutory damages" where the infringing product was not a luxury brand and the product sold for $50 at most); Prime Hookah Inc. v. FCM Online LLC, 2022 WL 1115361, at *5 (D.N.J. Apr. 14, 2022) (awarding $3,000 per counterfeit mark by "[b]alancing the monetary value [of $10.99 to $25.99] and the wider dissemination of the counterfeited goods on the internet"); Philip Morris USA Inc. v. Jaritza Supermarket, Inc., 2009 WL 4496047, at *2 (D.N.J. Nov. 9, 2009) (awarding $4,000 for defendant's sale of counterfeit Marlboro brand cigarettes).

### 2.  Attorneys' Fees

Finally, Plaintiff requests the recovery of (1) $15,968.42 in attorneys' fees for work performed in connection with preparing the Complaint, the motion to amend the Complaint, and the First Motion against Defendants House of Spices/Soni and Roshni/Aneja, to be divided equally amongst the two groups of Defendants; and (2) $6,883.21 in attorneys' fees for work performed in connection with preparing the Complaint, the motion to amend the Complaint, and the Second Motion against Defendants Bhavani/Patel.  (First Motion at 27; Second Motion at 26.)

The Lanham Act allows for attorneys' fees in "exceptional cases."  15 U.S.C. § 1117(a).
In the Motions for Default, Plaintiff argues that the Court should grant its request for attorneys'

fees because "[g]enerally, a trademark case is considered exceptional for purposes of an attorneys' fee award where the infringement is willful" and here, "Defendants' infringement is willful." (First Motion at 26–27; Second Motion at 25–26.) This, however, is no longer the standard followed by the Third Circuit.

In Fair Wind Sailing, Inc. v. Dempster, the Third Circuit imported the definition of "exceptionality" articulated in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014) into its interpretation of Section 35(a) of the Lanham Act: under Octane Fitness, "a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" 764 F.3d 303, 315 (3d Cir. 2014). Under Fair Wind Sailing, district courts have the discretion to determine whether a case is sufficiently "exceptional" to warrant attorneys' fees on a case-by-case basis, considering the totality of the circumstances. See id. "Importantly, that discretion is not cabined by a threshold requirement that the losing party acted culpably." Id. As such, Defendants' blameworthiness or willfulness "may well play a role in a district court's analysis of the 'exceptionality' of a case," but district courts should still consider the totality of the circumstances of a case. See id.

When awarding attorneys' fees in a motion for default judgment, some courts in this district considered the fact that the defendant failed to appear as litigating the case "in an unreasonable manner." See, e.g., Cosmetic Warriors Ltd. v. Nailush LLC, 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017); Sidewinder Films, LLC v. Sidewinder Films, LLC, 2022 WL 6964829, at *7 (D.N.J. Oct. 11, 2022) (same). Other courts in this district, however, do not agree that failing to appear reaches that "exceptional case" standard, and also consider factors such as where a plaintiff presented no evidence of notifying the defendant of its infringement and requesting a cease and

desist action prior to personal service of the complaint, no evidence of infringement after being served with the complaint, and no evidence of multiple sales channels of infringement such as over the internet, in determining that the record lacked evidence of "defendants' culpable or unreasonable behavior in litigating [the] case." See, e.g., Luxottica Grp., S.p.A. v. Shore Enuff, 2019 WL 4027547, at *9 (D.N.J. Aug. 27, 2019) (finding the evidence "insufficient to indicate that 'exceptional' circumstances intensified and exacerbated plaintiff's litigation efforts" even where defendants timely filed answers that were later stricken for lack of prosecution); Kinsley Tech. Co., 2023 WL 5218124, at *5 (declining to award attorneys' fees after finding the case not to be "exceptional," but awarding plaintiff costs).

The Court finds that this case does not meet the Lanham Act's definition of an "exceptional" case as articulated in Fair Wind Sailing. The Court does not agree that failing to appear in the action, alone, warrants a finding that the losing party litigated the case in an unreasonable manner so as to entitle the winning party to attorneys' fees.

As such, the Court denies Plaintiff's request for attorneys' fees.

### E.    A Permanent Injunction is Warranted.

Plaintiff also asks this Court to grant it a permanent injunction against Defendants' future use of the BOURNVITA mark.  (First Motion at 24; Second Motion at 23.)  The Lanham Act expressly provides for injunctive relief under Section 1116(a):

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to principles of equity an upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.

A permanent injunction is warranted where a plaintiff shows that: (1) it suffered an irreparable injury; (2) the remedies available at law prove inadequate to compensate for that injury;

(3) the balance of hardships between parties favors equitable relief; and (4) a permanent injunction would not be contrary to the public interest. See Matos, 133 F. Supp. 3d at 689 (quoting eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)).

The Court finds that permanent injunctive relief is warranted. The first factor, irreparable harm, is satisfied because Plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction" under 15 U.S.C. § 1116(a) and because Plaintiff demonstrated a likelihood of confusion. See Matos, 133 F. Supp. 3d at 689 (finding that irreparable injury becomes the "inescapable conclusion" where "Defendant's use of Plaintiff's *exact* Marks creates a clear case of confusion, and that Defendant's counterfeited products of inferior quality arguably diminish Chanel's reputation"). As to the second requirement, the Court finds that monetary damages alone would provide insufficient relief for Plaintiff as they would not "necessarily prevent, or even impede, future trademark infringement." Id. The second factor is also satisfied. The third factor, balancing the hardships, also favors injunctive relief. Defendants' only harm is that they obey the law and refrain from infringing and/or counterfeiting Plaintiff's mark. See, e.g., Kinsley Tech. Co., 2023 WL 5218124, at *6. Finally, the fourth factor, public interest, weighs in favor of Plaintiff as "[p]ublic interest favors injunctions in trademark infringement cases where, as here, likelihood of confusion has been established." Id. Because Plaintiff satisfies all four requirements, the Court will enter a permanent injunction against Defendants.

\*       \*       \*

For these reasons,

**IT IS** on this 28th day of July, 2025

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants House of Spices/Soni and Roshni/Aneja, (Dkt. No. 109), is **GRANTED** as to Counts I, II, IV, and V asserted against Defendants House of Spices and Roshni; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants House of Spices/Soni and Roshni/Aneja, (Dkt. No. 109), is **DENIED** as to Count II asserted against all Defendants; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants House of Spices/Soni and Roshni/Aneja, (Dkt. No. 109), is **DENIED** as to individual Defendants Soni and Aneja; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants Bhavani/Patel, (Dkt. No. 113), is **GRANTED** as to Counts I, II, IV, and V asserted against Defendant Bhavani; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants Bhavani/Patel, (Dkt. No. 113), is **DENIED** as to Count II asserted against both Defendants; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants Bhavani/Patel, (Dkt. No. 113), is **DENIED** as to individual Defendant Patel; and it is further

**ORDERED** that Plaintiff is awarded a judgment against Defendant House of Spices in the amount of $1,500.00; and it is further

**ORDERED** that Plaintiff is awarded a judgment against Defendant Roshni in the amount of $2,000.00; and it is further

**ORDERED** that Plaintiff is awarded a judgment against Defendant Bhavani in the amount of $1,000.00; and it is further

**ORDERED** that Plaintiff shall be granted leave to file an amended complaint within thirty (30) days of this order as to its claims against individual Defendants Soni, Aneja, and Patel; and it is further

**ORDERED** that Plaintiff's request for attorneys' fees is **DENIED**; and it is further

**ORDERED** that Plaintiff's request for a permanent injunction is **GRANTED** and Defendants House of Spices, Roshni, and Bhavani and any of their officers, agents, members, employees, representatives, parents, subsidiaries, affiliates, divisions, successors and assigns and all those persons in active concert or participation with any of them who receive actual notice of this judgment, shall be permanently enjoined from:

a) Using the BOURNVITA trademark or any reproduction, counterfeit, copy or colorable imitation thereof in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production or distribution of any goods or services;

b) Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Meenaxi's business reputation or goodwill in its BOURNVITA mark, including through the continued importation, advertising, sale, offering for sale and/or distribution of counterfeit BOURNVITA products;

c) Committing any other act calculated or likely to cause the public to believe that any products manufactured, distributed or sold by House of Spices, Roshni, and Bhavani are in any manner associated or connected with Meenaxi, or are sold, manufactured, licensed, sponsored, approved, or authorized by Meenaxi;

d) Destroying, altering, removing, or otherwise dealing with the infringing BOURNVITA products or any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offer for sale, advertising, promotion, rental or display of unauthorized products which infringe Meenaxi's BOURNVITA trademark; and

e) Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (d) above; and it is further

**ORDERED** that the Court shall retain continuing jurisdiction over the parties to this final order and over the subject matter of the action for the purposes of interpreting and enforcing the terms of this final order.


  *s/ Stanley R. Chesler*
STANLEY R. CHESLER, U.S.D.J.